## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| U.S. Department of Justice | ) | |
| Environment and Natural | ) | |
|   Resources Division | ) | |
| 10th & Pennsylvania Ave., N.W. | ) | |
| Washington, D.C. 20530 | ) | |
| | ) | Civil Action No. |
|       Plaintiff, | ) | |
| | ) | |
|       v. | ) | |
| | ) | |
| VOLKSWAGEN OF AMERICA, INC. | ) | |
| 3800 Hamlin Road | ) | |
| Auburn Hills, MI 48326 | ) | |
| | ) | |
|       Defendant. | ) | |

### COMPLAINT

The United States of America, by authority of the Attorney General of the United States
and at the request of the Administrator of the United States Environmental Protection Agency
("EPA"), files this complaint and alleges as follows:

### NATURE OF ACTION

1.      This is a civil action brought pursuant to Sections 203, 204, and 205 of the Clean
Air Act ("the Act"), 42 U.S.C. §§ 7522, 7523, and 7524, for injunctive relief and the assessment
of civil penalties against defendant Volkswagen of America, Inc. ("VWoA") for violations of the
Act and regulations promulgated thereunder.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of and the parties to this action pursuant to Sections 203, 204, and 205 of the Act, 42 U.S.C. §§ 7522, 7523, and 7524, and 28 U.S.C. §§ 1331, 1345, and 1355.

3.      Venue is proper in this jurisdiction pursuant to Sections 204 and 205 of the Act, 42 U.S.C. §§ 7523 and 7524, because the Administrator's principal place of business is here.

## DEFENDANT

4.      Defendant Volkswagen of America, Inc. ("VWoA") is incorporated under the laws of the State of New Jersey, licensed to do business in the District of Columbia, and a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

5.      At all times relevant to this action, defendant VWoA was engaged in the business of selling new motor vehicles in the United States, and a "manufacturer" within the meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1).

## STATUTORY AND REGULATORY BACKGROUND

6.      This action arises under Title II of the Act, as amended, 42 U.S.C. § 7521 - 7590, and the regulations promulgated thereunder, relating to emissions standards applicable to new motor vehicles for model year ("MY") 1994 and thereafter, as well as the requirement that a manufacturer promptly report an emission-related defect to EPA.

**A.      Emissions Standards for Non-Methane Hydrocarbons and Carbon Monoxide**

7.      Section 202 of the Act, 42 U.S.C. § 7521, sets forth the emissions standards applicable to specified classes of motor vehicles.  For light-duty vehicles after MY 1993,

emissions of non-methane hyrdocarbons (NMHC) are not to exceed 0.25 grams per mile and carbon monoxide (CO) emissions are not to exceed 3.4 grams per mile.

**B.    Reporting Obligations**

8.    Section 203(a)(2)(A) of the Act, 42 U.S.C. § 7522(a)(2)(A), prohibits any person from failing or refusing to make reports or provide information to EPA pursuant to Section 208 of the Act, 42 U.S.C. § 7542.

9.    Section 208(a) of the Act, 42 U.S.C. § 7542(a), requires manufacturers of new motor vehicles to establish and maintain records, perform testing, make reports, and provide information as EPA may reasonably require to determine whether the manufacturer has acted or is acting in compliance with Part A of Title II of the Act.

10.    EPA enacted regulations requiring manufacturers to report emission-related defects in new motor vehicles.  40 C.F.R. § 85.1903 requires a manufacturer of new motor vehicles to file a defect information report with EPA within 15 working days after the manufacturer determines:  (1) in accordance with the procedures established by the manufacturer to identify safety related defects pursuant to the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. § 1381 *et seq.*, as amended, now codified at 49 U.S.C. § 30101 *et seq.*, that a specific emission-related defect exists; and (2) that the specific emissions-related defect exists in twenty-five or more vehicles of the same model year.

11.    An "emission-related defect" is defined by 40 C.F.R. § 85.1902(b) as "a defect in design, materials, or workmanship in a device, system, or assembly described in the approved Application for Certification (required by 40 C.F.R. § 86.077-22 and like provisions of Part 85

and Part 86 of Title 40 of the Code of Federal Regulations) which affects any parameter or specification enumerated in Appendix VIII [to 40 C.F.R. Part 85]."

12.    Pursuant to 40 C.F.R. § 85.1901, the obligation to report emissions-related defects affecting a given class or category of vehicles is applicable for five years from the end of the model year in which such vehicles were manufactured.

## GENERAL ALLEGATIONS

13.    VWoA has sold, offered for sale, or introduced or delivered for introduction into commerce, new motor vehicles in the United States, including MY 1999 through MY 2001 Golfs, Jettas, and New Beetles, classified as "light duty vehicles" under the Act and applicable regulations, in the following 2.0L engine families (the "Subject Vehicles"):

XVWXV02.0222, XVWXV02.0227, YVWXV02.0222, YVWXV02.0227,

1 VWXV02.0227, and 1 VWXV02.0222.

14.    VWoA sold at least 326,000 of the Subject Vehicles in the United States.

15.    The Subject Vehicles, as originally manufactured, were equipped with a heated oxygen sensor, Part No. 06A 906 262Q ("$O_2$ sensor"), positioned in front of the catalytic converter.  The $O_2$ sensor provides information to the engine control module necessary to control the fuel and air mixture in the engine at precise levels for the engine to run efficiently and to meet applicable NMHC, CO, and other emissions standards.

16.    As originally manufactured, the electrical system of the Subject Vehicles was programmed to rapidly heat the $O_2$ sensor upon engine start-up.

17.    During the winter of 1999-2000, VWOA received numerous warranty claims regarding problems associated with cracked or failing $O_2$ sensors, such as dashboard "check engine" lights being illuminated or reduction in fuel efficiency.

18.    By no later than May 2000, VWoA had actual knowledge of at least 25 identical failures of $O_2$ sensors (i.e., cracking as the failure mode), and began an internal investigation of the cause of an "upward trend' of warranty claims.

19.    In July 2000, VWoA issued a "warranty in review" report to the California Air Resources Board ("CARB") regarding the internal investigation, and had begun an investigation to determine the cause of the cracking of the $O_2$ sensor in the Subject Vehicles.

20.    In the Fall of 2000 VWoA determined the failure mode to be thermal shock, and that the $O_2$ sensors were more prone to crack and fail in cold and damp weather conditions.

21.    During late 2000 and early 2001, VWoA began developing a solution to the cracking and failure of the $O_2$ sensors. By April 2001, VWoA had developed a field fix involving the reprogramming of the Subject Vehicles' on-board computer to slow the rate of heating the $O_2$ sensors upon engine start-up.   Around the same time VWoA implemented the same change in on-going production of new vehicles with the 2.0L engine.

22.    Through June 2001, VWoA had replaced more than 32,600 $O_2$ sensors in the Subject Vehicles.

23.    VWoA did not file an EDIR with EPA concerning the defect associated with the $O_2$ sensor in the Subject Vehicles until June 15, 2001.

24.     Shortly after filing an EDIR with EPA, VWoA agreed with EPA to voluntarily implement a recall of the Subject Vehicles.  In January 2002, VWoA issued a press advisory and began the recall.

25.     VWoA repaired 277,927 of the affected vehicles (86.3% of the recall population), of which 89,379 were fitted with new $O_2$ sensors (27.1% of the recall population), as part of the recall campaign.

26.     The cracking and failure of the $O_2$ sensors caused the Subject Vehicles to exceed the applicable emission standards for NMHC and CO.   VWoA's failure to timely file an EDIR prevented EPA from taking prompt action to address the emission-related defect in the Subject Vehicles and the associated environmental impact.

## CLAIM FOR RELIEF
### (Section 203(a)(2)(A):  Failure to Report)

27.     Plaintiff realleges paragraphs one through 26 above as if fully set forth herein.

28.     VWoA sold, offered for sale, or introduced or delivered for introduction into commerce, motor vehicles, including the Subject Vehicles, in the United States.

29.     The Subject Vehicles contain an "emissions-related defect" as defined by 40 C.F.R. § 85.1902(b) related to the cracking or failure of $O_2$ sensors, Part No. 06A 906 262Q, in the Subject Vehicles.

30.     By no later than May 2000, VWoA determined, or in good faith should have determined, the existence of the emissions-related defect based upon data VWoA received under its established procedures, or procedures established in good faith, to identify safety-related defects pursuant to 49 U.S.C. § 30118(c).

31.    VWoA failed to file an EDIR with EPA within 15 working days after VWoA had actual or constructive knowledge of the existence of a specific emission-related defect in twenty-five or more vehicles of the same model year in violation of Section 203(a)(2)(A) of the Act, 42 U.S.C. § 7522(a)(2)(A).

32.    VWoA is liable for injunctive relief pursuant to Section 204(a) of the Act, 42 U.S.C. § 7523(a), and civil penalties of up to $27,500 per day per violation occurring on or after January 30, 1997 pursuant to Sections 205(a)of the Act, 42 U.S.C. § 7524(a), Public L. 104-134, and 61 Fed. Reg. 69360.

## PRAYER FOR RELIEF

Wherefore, plaintiff, the United States of America, respectfully demands judgment against defendant, Volkswagen of America, Inc. as follows:

A.    Permanently enjoining VWoA from failing or refusing to file with EPA an EDIR within fifteen days of determining, in good faith, that a specific emissions-related defect exists and that such defect exists in twenty-five or more vehicles of the same model year;

B.    Ordering VWoA to take appropriate action to remedy the violations of Sections 203(a)(2)(A) and 203(a)(4)(D) of the Act, 42 U.S.C. §§ 42 U.S.C. § 7522(a)(2)(A) & 7522(a)(4)(D), alleged above;

C.    Assessing civil penalties against VWoA for each violation of Section 203(a)(2)(A) of the Act, 42 U.S.C. § 7522(a)(2)(A), alleged above of up to $27,500 per day per violation occurring on or after January 30, 1997; and

D.    Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

KELLY A. JOHNSON, D.C. Bar # 431714
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
10th & Pennsylvania Avenue, N.W.
Washington, D.C. 20530

JERELL L. ELLINGTON, Colorado Bar # 9696
Senior Counsel
Environmental Enforcement Section
United States Department of Justice
999 18th Street, Suite 945NT
Denver, CO 80202
Telephone: (303) 312-7321

KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney for the District of Columbia

R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone:  (202) 514-7566

-8-

KEITH V. MORGAN, D.C. Bar #422665
Assistant U. S. Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone: (202) 514-7566


OF COUNSEL :

ANGELA E. FITZGERALD
Attorney, D.C. Bar # 413290
Air Enforcement Division
Office of Regulatory Enforcement
Office of Enforcement and Compliance Division
1200 Pennsylvania Avenue, N.W.
Mailcode 2242A
Washington, D.C. 20004
Telephone: (202) 564-1018

-9-