Kevin L. Fast, Esq.
Law Office of Kevin L. Fast
8300 Boone Blvd.
Suite 528
Vienna, Virginia 22182

Telephone: (703) 761-6739
Facsimile: (703) 848-4586
E-mail: klflawoffice@cox.net

August 12, 2005

**VIA FACSIMILE AND FIRST CLASS MAIL**

Kelly A. Johnson
Acting Assistant Attorney General
Environmental and Natural Resources Division
PO Box 7611
U.S. Department of Justice
Washington, D.C. 20044-7611

Re:   Notice of Lodging of Proposed Consent Decree in *United States v. Volkswagen of America, Inc.*, Civil Action No. 1:05-CV-01193-GK, 70 Fed. Reg. 40,734 (July 14, 2005)

Dear Ms. Johnson:

These comments on the above-referenced consent decree ("Consent Decree") are submitted on behalf of Afton Chemical Corporation ("Afton Chemical"). Afton Chemical appreciates the opportunity to submit these comments for consideration by the U.S. Department of Justice.

**The Relevance of the Consent Decree to Afton Chemical**

Afton Chemical manufacturers and markets fuel additives and lubricants for use in motor vehicles. To help guide new product development and to ensure that the products Afton Chemical manufacturers and markets are compatible with the proper operation of motor vehicles, Afton Chemical monitors the reports submitted by motor vehicle manufacturers concerning defects in emission control system components as mandated by 40 C.F.R. Part 85, Subpart T.

More specifically, Afton Chemical has a direct and particular interest in reports submitted by Volkswagen of America, Inc. ("VW") because VW has made allegations that one of the products marketed by Afton Chemical -- methylcyclopentadienyl manganese tricarbonyl (or "MMT®") -- has caused the failure of vehicle emission control system components in places where MMT® is used in gasoline, which includes North America.

1:05-cv-01193-GK        Exhibit A

Kelly A. Johnson
August 12, 2005

Among the emission system components that VW alleges are harmed by exposure to MMT® are catalytic converters, spark plugs, and oxygen sensors. (Attachment A to these comments is a copy of a presentation made by VW at the Asian Vehicle Emission Control Conference 2004 in Beijing, China which illustrates the concerns VW has expressed about MMT®.)

**Afton Chemical's Comments on the Consent Decree**

In general, Afton Chemical supports negotiated settlements of alleged violations of environmental standards and limitations and, for that reason, defers to the collective judgment of the Department of Justice, the Environmental Protection Agency ("EPA"), and VW regarding most of the terms and conditions of the Consent Decree. In several fundamental respects, however, the Consent Decree is "inappropriate, improper, or inadequate" under the criteria for approval of Consent Decrees set forth in 28 U.S.C. § 50.7, and, therefore, should be withdrawn pending necessary revisions.

I.   **The Consent Decree is Inappropriate, Improper or Inadequate Because It Conflicts with Existing Regulatory Requirements Concerning the Reporting of Emission-Related Defects.**

EPA regulations specify when motor vehicle manufacturers must submit defect reports concerning the performance of emission system components in the field. In particular, the relevant regulations provide that:

> A manufacturer shall file a defect information report whenever, on the basis of data obtained subsequent to the effective date of these regulations: (1) The manufacturer determines in accordance with procedures established by the manufacturer to identify safety related defects (pursuant to 15 U.S.C. 1381 et seq., as amended) that a specific emission-related defect exists; and (2) That the specific emission-related defect exists in twenty-five or more vehicles or engines of the same model year.

40 C.F.R. § 85.1903 (a). EPA's regulations further specify that "[d]efect information reports . . . shall be submitted not more than 15 working days after an emission-related defect is found to affect twenty-five vehicles or engines of the same model year." *Id.*, § 85.1903(b).

The Consent Decree is inappropriate, improper, or inadequate because it conflicts with EPA's existing regulatory requirements for the reporting of emission-related defects. Paragraph 2 of Appendix B of the Consent Decree purports to increase the reporting threshold for different emission-related components by as much as 40-fold depending upon the particular component at issue. (Table 1 below shows the existing regulatory thresholds and how the regulatory thresholds would change under the terms of the Consent Decree on a component-by-component basis.)

Kelly A. Johnson
August 12, 2005

Neither the Consent Decree, nor the notice of its lodging that appeared in the *Federal Register*, explains the rationale for (much less identifies a legal basis that could support) imposing *less stringent reporting thresholds* to settle an alleged failure to properly report defects in accordance with the existing regulatory requirements. Afton is not separately aware of any legal basis that would allow imposition of less stringent reporting thresholds. For this reason, the Consent Decree should be withdrawn pending appropriate revisions to ensure its consistency with existing regulatory requirements.

### Table 1

### A Comparison of the Thresholds Triggering the Submission of Defect Information Reports Under Existing Regulatory Requirements and Under the Proposed Consent Decree Between the United States and Volkswagen of America, Inc.

| Component | | | Number of Vehicles Manufactured | | |
|---|---|---|---|---|---|
| | ≥2500 | 5000 | 10,000 | 50,000 | >50,000 |
| **Catalyst[1]** | | | | | |
| Regulation | 25 | 25 | 25 | 25 | 25 |
| Decree | 25 | 50 | 100 | 500 | 500 |
| **ECM[2]** | | | | | |
| Regulation | 25 | 25 | 25 | 25 | 25 |
| Decree | 25 | 50 | 100 | 500 | 500 |
| **Other ATD[3]** | | | | | |
| Regulation | 25 | 25 | 25 | 25 | 25 |
| Decree | 25 | 50 | 100 | 500 | 500 |
| **Other[4]** | | | | | |
| Regulation | 25 | 25 | 25 | 25 | 25 |
| Decree | 50 | 100 | 200 | 1000 | 1000 |

---

[1] Catalytic converter.
[2] Electronic control module.
[3] Other aftertreatment device.
[4] Emission-related defects in components other than the catalytic converter, ECM or other ATD.

Kelly A. Johnson
August 12, 2005

**II.     The Consent Decree is Inappropriate, Improper or Inadequate to the Extent that It Conflicts with Existing Regulatory Requirements Which Establish the Framework for Investigating the Existence of Emission-Related Defects.**

EPA regulations specify the framework that vehicle manufacturers must use to investigate whether emission-related defects exist. The regulations direct vehicle manufacturers to use "procedures established by the manufacturer to identify safety related defects (pursuant to 15 U.S.C. 1381 et seq.,[5] as amended)" to determine "that a specific emission-related defect exists." *Id.*, § 85.1903(a)(1) (footnote not in original). To this end, the National Highway Traffic Safety Administration ("NHTSA") has established detailed requirements concerning the procedures to be used by vehicle manufacturers for identifying the existence of safety-related defects.

NHTSA's regulations are set forth in 49 C.F.R. Part 579. In brief, NHTSA requires automobile manufacturers to analyze in-use vehicle performance data obtained from a wide variety of sources (e.g., warranty information, field reports, consumer complaints, etc.) to determine the existence of safety defects, and whenever they are determined to exist, to report them to NHTSA. Since November 2000, moreover, vehicle manufacturers have had to evaluate the performance of vehicles in foreign countries, including Canada, for possible reporting of safety-related defects to NHTSA if the vehicles operating in the foreign country are substantially similar to any vehicles operating in the U.S. *See* 49 C.F.R. Part 579, Subpart B.[6] This change in the law triggered, in turn, a parallel obligation to evaluate the performance of emission-related components under similar circumstances since EPA's regulations specifically anticipate that 15 U.S.C. §1381 *et seq.* (now 49 U.S.C. § 30101 *et seq.*) would be amended from time to time. *See* 40 C.F.R. § 85.1903(a)(1) (expressly referring to the relevant statutory provision "as amended").

As far as Afton can discern, the procedures NHTSA has put in place governing how vehicle manufacturers monitor and investigate the existence of safety-related defects do not contain numerical thresholds for triggering the investigation of potential defects consistent with those set forth in paragraph "1" of Appendix B of the Consent Decree. Nor do the NHTSA procedures purport to limit the information that must be assessed to that which is (or may be) known only to a single corporate entity, such as Volkswagen of America, Inc. To the contrary, NHTSA's requirements expressly expand the universe of potentially relevant information to include information that may be known by a parent, affiliate, or subsidiary of the reporting entity. *See, e.g.*, 49 C.F.R. § 579.4 (defining the term "manufacturer").

Neither the Consent Decree, nor the notice of its lodging that appeared in the *Federal Register*, address (much less explain) the apparent inconsistency between the Consent Decree and EPA's regulations. For this reason, the Consent Decree is inappropriate,

---

[5] Recodified at 49 USC § 30101.
[6] *See also* "Compendium for Early Warning Reporting for Manufacturers of Motor Vehicle Equipment," Office of Defects Investigation, National Highway Traffic Safety Administration (September 2003, Version 2).

Kelly A. Johnson
August 12, 2005

improper, or inadequate and must be withdrawn pending appropriate revisions to ensure its consistency with existing regulatory requirements.

### III. The Consent Decree is Inappropriate, Improper or Inadequate Because It Purports to Alter Existing Regulatory Requirements Governing the Investigation and Reporting of Emission-Related Defects Without Appropriate Rulemaking.

As explained above, existing EPA regulations impose clear thresholds for the reporting of emission-related defects. EPA's regulations also specify how manufacturers must go about determining if an emission-related defect exists. Absent appropriate rulemaking proceedings to amend the reporting thresholds set forth in EPA's regulations, the reporting thresholds cannot be altered. The same is true for altering the framework which applies for establishing the existence of emission-related defects. Because the Consent Decree purports to alter both the reporting thresholds and the framework for establishing the existence of emission-related defects by means other than appropriate rulemaking, the Consent Decree is inappropriate, improper or inadequate and should be withdrawn.

Once again, Afton Chemical appreciates the opportunity to provide these comments. If you have any questions concerning the comments, please contact the undersigned at (703) 761-6739 or via electronic communication at klflawoffice@cox.net.

Sincerely,

Kevin L. Fast, Esq.
Counsel to Afton Chemical Corporation

Enclosure

Asian Vehicle Emission Control Conference 2004 (AVECC 2004)
27 - 29 April, Beijing, China.

# Impact of MMT on vehicle emission performance

Klaus-Peter Schindler
Volkswagen AG, Wolfsburg, Germany



## Background - MMT Fuel Additive

❖ Market fuel octane under pressure due to limits being placed on composition by upcoming fuel legislation

❖ Organo-metallic additives are a cheap way to increase octane

❖ Experience with these additives shows that they can cause

&gt; Health problems

&gt; Technical problems

Impact of MMT on vehicle emission performance 

ATTACHMENT A

## Previous Findings



HEALTH
EFFECTS
INSTITUTE

"Exposure to some metals has been found to cause neurologic damage — for instance, in workers exposed to moderate to high levels of manganese via inhalation."

Impact of MMT on vehicle emission performance 

## Transport Mechanisms



HEALTH
EFFECTS
INSTITUTE

"Yokel and Crossgrove have provided convincing evidence that **manganese enters the brain via carrier-mediated transport**, confirming and extending previous observations. They also are the first to have shown that **manganese leaves the brain via diffusion only**, a much slower process than carrier-mediated transport."

Impact of MMT on vehicle emission performance 

## Implications



HEALTH
EFFECTS
INSTITUTE

"The finding that manganese transport out of the brain occurs via the slow process of diffusion, rather than via carrier-mediated transport, is important: **it suggests that no mechanism exists to protect the brain from accumulating manganese. This finding has important implications for neurotoxicity resulting from chronic manganese exposure.**"

Impact of MMT on vehicle emission performance 

## Technical problems with MMT fuel additive

- ❖ Experience with MMT shows that it can cause
  - ❖ Catalyst blocking
  - ❖ Spark plug misfire
  - ❖ Hego biasing / malfunction
- ❖ Significant risk for in-service emissions compliance (100,000km for Stage 4) if used in Europe
- ❖ Higher cell densities is expected to be more prone to manganese blocking (Tier 2 vehicles using up to 900:2 cell density catalysts)

Impact of MMT on vehicle emission performance 

## European Commission Fuel Review

- The current fuel directive instructs Commission to further review fuel quality by end of 2005

- It specifically asks for a review of the effect of metallic fuel additives on aftertreatment systems

- Current European fuel specification does not specifically exclude Mn or Fe, which leaves the door open for their use

- MMT is being used in some EU Accession States

- Most recent survey showed up to 55ppm manganese in Latvia – joins EU in 2004

Impact of MMT on vehicle emission performance 

## Experience with MMT

- Canada:
  Customer complaints:
  - Uneffective catalysts by plugging.

- South Africa:
  Endurance tests with market fuels:
  - Untypically high emissions deterioration.
  - Spark plug deposits
  - Successful test completion unlikely

Impact of MMT on vehicle emission performance 





## Volkswagen experience concerning MMT

❖ China:
  Endurance tests with market fuels
  ➢ spark plug fouling
  ➢ catalyst plugging
  ➢ mangenese containing deposits in the exhaust system (including combustion chambers)
  ➢ deposits in piston ring grooves
  ➢ wear on piston rings and ring grooves
  ➢ poisoning of the lambda sensors

Impact of MMT on vehicle emission performance 

## China: Deposits on glow plugs



Impact of MMT on vehicle emission performance 





## China: Manganese distribution



Source: SVW

Legend: >18mg/L, 10~18mg/L, 5~10mg/L, 0~5mg/L, 0 mg/L

Impact of MMT on vehicle emission performance

## MMT - Position of Volkswagen

- ❖ No robust engineering solution

- ❖ The adverse effects these fuel additives have on vehicle emissions are in direct contradiction with air quality objectives.

- ❖ The anticipated benefits of the advanced emissions requirements for gasoline vehicles will be compromised by the addition of these fuel additives in commercial fuels.

- ❖ **Banning of these products is essential**

Impact of MMT on vehicle emission performance 

